Good morning. Ms. McKee, it appears we have four cases for argument today. Would you announce our first case for argument, please? Yes, Your Honor. Case number 25-1680 from the District of Minnesota, David Vipond v. David DeGroat, et al. Ms. Carter, when you're ready. May it please the Court, I'm Courtney Carter and my co-counsel Randy Thompson and Levi Liebel and I represent appellant David Vipond in this matter. David Vipond is a third generation farmer who has a family farm in Minnoman, Minnesota that he has farmed for the last 35 years. This case is about whether a tribe can regulate a non-Indian farmer on his own fee land and require them to submit to tribal regulation even after the state of Minnesota has determined that his water appropriation would be safe. Mr. Vipond has brought this appeal because he's being required to defend himself in a court that lacks jurisdiction over him regarding an ordinance issued by a government in which he cannot participate because he received a permit from the Minnesota DNR to appropriate water under terms that he did not decide. He is a symbol in a dispute that is actually between two governmental agencies. White Earth has chosen to litigate this matter against him in an effort to bolster its tribal sovereignty because they prefer it to litigate against an individual permit recipient rather than the Minnesota DNR which would require litigation outside of their tribal court. Counsel, I wanted to ask you on that point, the tribe has now decided that at least the tribal court level that they don't have jurisdiction anymore. So, obviously if the tribe appeals, if the tribal agency appeals, the case will go on. But if the tribal court or if the decision is not appealed, why isn't this case just over? Because remember, this is kind of about exhaustion of remedies and there would be an exhaustion of remedies here. Your Honor, respectfully, we disagree that there would be an exhaustion of remedies because the tribal court's order specifically found that the regulatory scheme itself is valid and that the ordinance is valid as a matter of law. So, Mr. Vipond is still a regulated party. He could apply for a permit to appropriate water for a different portion of his farmlands. This pump wouldn't appropriate water for all of his land. It appropriates water for about a third of it. How would the tribe enforce that? Tell me what the tribal decision says about that. My understanding was that there was regulatory authority but not tribal court authority. Is that correct? In other words, how does that play out? Because if you can't go to the tribal court and enforce what the tribe wants to do, where does that leave your client? Your Honor, I don't believe that the tribal court has no authority. It was specifically related to this pump, right? So, they didn't meet – the tribal court found that he did not meet or that the ban did not meet the second Montana exception as to this location of this pump. But in theory, he could put a pump in a different part of his property and he'd have to go through this same jurisdictional analysis again. But he could come back to court and deal with it then. I mean, you're talking about a new case, I think. It would be a new action if that were the case, but the ordinance is still ongoing. And so, because he's a regulated party, he's still subject to this regulation. It isn't mooted because this controversy could still occur between the same parties. And Mr. Vypond is still subject to the tribal regulation here. The tribes... Could your client appeal that determination? Yes. Yes, Your Honor. Also, we believe that parts of that order are appealable for us. It was not a win at the tribal court in our estimation. Has a decision been made by your client yet or not? We plan to appeal, Your Honor. And the issue here is that if we didn't appeal, right, then we face an issue where we haven't potentially exhausted in the tribal court. And then, I would also argue that the White Earth's position that the case is mooted only if they don't appeal is analogous to a voluntary cessation case, where they can moot the case if they don't appeal it. Then they should face a heavy burden in establishing it. I think what you're forgetting is potentially offensive collateral, mutual offensive collateral estoppel, where you could come in and say, well, you've already determined you can't regulate and you're trying to now regulate me and you can't do that. And so, that's a sort of... To me, that's an ordinary case. It's not voluntary cessation because you have a favorable judgment. That's the difference. Whereas voluntary cessation is where you say, hey, don't make a decision because we've stopped. Does that make sense? Yes, Your Honor. I think that the difference here is that Mr. Vypond's... The tribal court's order is only about this particular pump. And so, it only denied an injunction in the tribal court for that particular pump. But isn't that the only issue that was before the district court here? I mean, I didn't understand the lawsuit to be an attempt to completely throw out the regulatory scheme of the tribe. Did I misunderstand that? It was to enjoin the tribal court's litigation. And so, we do... Regarding this pump? Yes. That's not a broad attack on the whole regulatory scheme. Well, we do believe that we ask for a declaratory judgment that he's not subject to the tribal regulation. And so, because the ordinance is still upheld... With respect to this pump, right? That, yes. Okay. So, I don't see what's left. I mean, you say that the whole regulatory scheme shouldn't be applied, but I don't think that's... I think we're talking about one single pump here, not the whole regulatory scheme. Your Honor, respectfully, because the ordinance is still in play, he could still face this very easily again. But on different facts, right? I mean, isn't the whole Montana analysis about the specifics about where the pump is located, what the tribal interests are, and wouldn't all of that change if it's a different... Or it could change for a different pump in a different location with a different water source, different distance from the tribal boundaries. I mean, that's an entirely different case, isn't it? In other words, aren't these like as-applied cases? Yes, Your Honor. I think that one thing to keep in mind is that there's a gamesmanship aspect here that the court should not ignore, which is that when White Earth faced federal litigation in the district court here brought by RD Offutt Farms, which is a large farming enterprise, it amended the Water Protection Ordinance to no longer apply to existing sources and paused that enforcement. And that worked. The district court held that that was moot as to them and dismissed the case. And now 10 days before we were to appear in this court, we get the tribal court decision, which holds that there's no adjudicatory jurisdiction over Mr. Vipund for this particular pump. And White Earth asserts that the matter is mooted unless they appeal the tribal court decision. So our position is that the matter is not concluded. We haven't finished the appeals process in the tribal court. We can appeal that determination. And therefore, there still is relief that the court can provide for us here. A case only becomes moot when it is impossible for a court to grant any effectual relief whatsoever to the prevailing party under Knox v. Service Employees International Union. Let me just ask, if you appeal but the tribe doesn't, then can't the decision only become better for you? In other words, like if the tribe's not, it can't become worse, right? Because the tribe would not be the one appealing. So wouldn't it be moot even if you appealed? Right? Because you're presumably appealing something. They would say no or yes. And the yes would be better for you. Right? That's how appeals work. I'm not sure I quite understand your premise there. So if you were to appeal and they don't, you're going to be arguing for something more favorable than you already have. So the answer that the tribal court of appeals is going to give you is either no, we're going to leave things as is, or yes, we're going to make things better for you. I've never seen somebody one side appeal and say no, we're actually going to impose a greater sanction against yours. I mean, that just usually doesn't happen. And so my point is, is your appeal actually relevant? Well, I believe that the tribal court or the court of appeals could still determine whether there was jurisdiction under Montana in reverse. Not if they don't appeal that. You wouldn't be arguing that there is jurisdiction, right, in your appeal? That's true, Your Honor. I think... There's Supreme Court precedent. I think Judge Strauss is exactly right. There's Supreme Court precedent that says unless they appeal, things can't get better for them. How are you at disadvantage by the tribal court order? I would liken it to winning the battle but losing the war, as the ordinance is still upheld and he's still subject to it, because the ordinance assumes jurisdiction over everybody within the boundary, similar to the Montana case. So you were seeking, and I'm using imprecise terms, a facial invalidation of the regulation to your client. In the tribal court, we are holding... We argue that it's not valid. That's correct. And that's what you think is missing, what you didn't get. So you're worried next time, next time you'll have to go through this again. Is that fair? Yes. Yes. Is the so-called facial validity of the regulation before the district court in this case? Was that question before the district? Or maybe you challenged it in the tribal court, but was that before the district court? We were challenging... We were seeking to enjoin this litigation here. With respect to the single pump, not the entire regulatory scheme, right? Yes, Your Honor. What I would... Aren't you changing the game here? No, Your Honor. What I would say is that we have had a week since they raised this argument. If the court would like supplemental briefing on this issue of mootness, we can provide that issue. But we have had one week since they raised this argument before this argument today to look at this 130-page decision and try to figure out what we're going to do with it. So I would ask that if the court is very concerned about this issue of whether the dispute is still live, that we can offer a supplemental briefing on that. If we were to rule for you in this case and find that the tribal court lacked jurisdiction and remanded the district court for an injunction, that injunction would apply to this case, right? It wouldn't say that they couldn't try to regulate a new well in the next case, nor would we order the district court, I presume, to order the district court never to... Or the tribal court never to exercise regulatory or adjudicatory jurisdiction over your client again. Isn't that kind of where we're at? Like, if you win in this case, you win on this pump. And I don't think you... I may be wrong, and I understand that this is new. It's new to me, too. But I don't think you were ever seeking broader relief. I understand how you would like it. I think I understand why you're not happy where you're at now with the tribal decision, but I don't know that that's something that we can fix given the way the case came up. Your Honor, what I would say is that you can look to what happened in the Fort Yates case here that was before this circuit, where the parties had received a decision at the tribal court, and the court held that because Montana was not satisfied, they didn't need to go through the appeals process and exhaust because it was plain that the tribe lacked jurisdiction. And so we are seeking similar relief to that, that we don't need to go through this tribal court of appeals process because it is plain that they lacked jurisdiction. Let me just... One question I have for you. Let's leave the tribal court decision aside for a second, at least directly. Is there any threat that the W... I forget what the acronym is, but that they would enforce... that they would go ahead and enforce this ordinance against you despite the tribal court jurisdiction? Because they said that there was no adjudicatory decision. So is there any kind of like imminent... Are you bringing a pre-enforcement challenge, in other words, because you think they're going to ignore the tribal court order and go ahead and regulate anyways? I think it's possible, Your Honor. I mean, essentially, this is a pre-enforcement challenge in the sense that he's still subject to this regulation. And therefore, it's not inconceivable that he might want another pump or that they might still attempt to enforce it against him. I don't believe that the jurisdiction question is... Well, if they tried to enforce it against him, you could go to tribal court, presumably, and seek an injunction there, right? We've been disputing the jurisdiction of the tribal court extensively, so... I get it. That might be an awkward moment for you, but under the court's previous recent decision, theoretically, someone could do that, right? Yes, I would agree that, in theory, they could do that. Great. All right. Turning to the merits for just a second here, why doesn't Cooley not render tribal jurisdiction at least plausible? Because, Your Honor, all Cooley held was that a tribal officer, in the criminal context, could temporarily detain and turn over a suspect to local authorities. It was not an issue of applying tribal law. And so that is the difference here. That was a violation of state law that was at issue in Cooley, or even federal law, but it wasn't an issue of tribal law. And so Cooley only stands for the proposition that, for example, White Earth could monitor his activity under the state permit, and if he's found to be violating it, report him to the Minnesota DNR. That's the analogous situation from Cooley. Okay. I'd like to reserve the last minute of my time for rebuttal, please, Your Honor. Thank you so much. Thank you. Good morning, Mr. Kanji. Good morning. Thank you, Your Honor. May it please the Court, I don't want to spend too long on mootness because, in all likelihood, and there's not been a final governmental decision made, but in all likelihood, the White Earth DNR will either appeal the decision of the tribal court or move to amend it, which would moot the mootness issue. But I do want to just reinforce, I think, what I heard from several of the Court's questions. Can I just clarify that? I just want to make sure I heard you right. The tribe is likely to appeal. Is likely to. A final decision hasn't been made. Because I understand that there's just one level of appeal, right? That's correct, Your Honor. There's a three-judge tribal court of appeals. So if the three-judge tribal court of appeals were to affirm, and if we didn't have a decision by then, it would be moot, right? Yes, if they were to affirm. That's exactly right. The, just to reinforce a few things that I heard in the questions, in terms of the case or controversy here, the case in tribal court has been framed as a dispute over Mr. Vipon's ability to install this pump without going through the tribal permitting scheme. That is how Mr. Vipon has understood the case below. I'm reading from the post-hearing memorandum from Mr. Vipon on jurisdiction in the tribal court, which we can lodge with the court if it's of interest. The question of the validity of the ordinance as applied to all non-members operating on their fee lands is not before the court here. All that is before this court involves Mr. Vipon. Mr. Vipon is actually arguing below that there is no case of controversy in the tribal court, because he's not made a final decision as to whether to install a pump, which he calls a business decision. He's argued that this whole action below is premature. I'm not sure where the facial challenge to an ordinance is coming in, but that is not how the case below has been framed. The request to the federal district court for an injunction was with respect to the effort to require Mr. Vipon to get a permit. In the absence of an appeal, so we're assuming no appeal, is there any chance that the tribe would enforce the ordinance based on that passage you just read against Mr. Vipon basically in the absence of tribal court jurisdiction? There's absolutely no chance, and this goes to Judge Kobus' question as well. The the decision of the White Earth Courts. It's an agency subject to the jurisdiction of the courts, and without the involvement of the court, there is no way to enforce the permitting requirement. It's just like a state government or the federal government. The courts are the mechanism of enforcement, and with the tribal trial court, and as you said, assuming no appeal or affirmance on in those situations, the tribal courts will have decided that they do not have jurisdiction over Mr. Vipon with respect to the specific case. And that includes the agency, and that's why I'm asking because oftentimes we see where they say, oh, here's a limited holding, and then a regulatory agency comes in, and well said. They just said we couldn't. They didn't say anything about enforcing it. They just said that the court didn't have jurisdiction over it, so I just I wanted to be sure that we don't have a situation in which it might be enforced anyways, and you're telling me the answer is clearly no. I'm telling you the answer is clearly no. Unequivocal. Unless there are other questions on mootness, I'd like to turn to the exhaustion issues in this case, and the main point that I want to enforce is that, as this Court understands, there are two distinct phases to these cases. There's the exhaustion phase, and then there is the determination on the ultimate to be conflated. The issue arises with this fourth exception to exhaustion, the straight exception, where sometimes parties do, as Mr. Vipon has come into court before there has been complete exhaustion. This Court and DISH Network and the District Court below have both stressed that the exception needs to be read very narrowly. Otherwise, we end up in these situations like we are in this case now, where you have the federal court placed almost in competition with the tribal court. There are arguments being made on jurisdiction in the federal court system at the same time that the tribal courts are working through those issues, and the whole point of the exhaustion doctrine is to give the tribal courts a chance to work through those issues in the first instance, to develop a factual record, and to distill the legal issues for ultimate consideration and determination by the federal court system. When we have a premature filing, as we have had in this case, we end up honestly with a little bit of a mess and competing court actions. Where this Court has said that the exception applies only where the assertion of jurisdiction is frivolous or obviously invalid under clearly established law, I think that is a very important line for this Court to hew to in order to serve the purposes of the exhaustion doctrine and to make sure that we do in fact end up with the orderly administration of justice, which is one of the cardinal purposes of the doctrine. As I understand... Why isn't it plainly invalid under the language in Plains Commerce? It seems to require catastrophic effects or imperils the subsistence of the tribe. So I'm not sure we have that level of interest on behalf of the tribe here. Well, that's precisely the issues that the tribal court is working through. The White Earth DNR's position is that that language is absolutely satisfied by the regulatory ordinance here for these reasons, Your Honor. It's interesting, as you say, Plains Commerce Bank used the imperil, the subsistence language, so did Montana originally. What we have here is an ordinance that seeks to protect resources that lie at the heart of tribal subsistence, tribal subsistence economy and culture. That may be true of the ordinance, but aren't we... Again, we're not talking about a facial attack to the ordinance. I think you reinforce that. We're talking about this particular pump. So the case, and I want to be very clear here, this litigation is about the particular pump. The ordinance that was enacted was meant to address a class of threats, a class of very serious threats posed by these high pumping capacity appropriations that are draining the water resources on the reservation and thereby imperiling the fisheries and the wild rice that are central. I understand that from a big picture, but I think it's Judge Koba's phrase that we're dealing with an as-applied situation, so to speak. So I think we're talking about, does this particular pump affect the subsistence, imperil the subsistence of the tribe? So here's the key legal issue that you're... I'm wrong. Set me straight. Here's the key legal issue that your question really zeroes in on. In judging the regulation, the regulatory ordinance, what lens does one view it through? Our position is that where, so long as there is a threat, a Montana recognizable threat, that the tribe, like any other government, is enabled to address that threat through broad-based regulation, through a regulatory scheme that requires individuals to apply for permits to engage in their activity. So all this controversy is about whether Mr. Vipon needs to apply for a permit from the regulatory agency. It is in that context that the ordinance provides him the opportunity to make his case-specific arguments about why his particular pumping operation warrants the issuance of a permit. But the problem with that is you're regulating non-members, and so the tribe's jurisdiction is very narrow or much narrower with regard to non-members. And so I'll sort of return to what Judge Grunder was saying, which is why isn't the tribe's interest imperiled not on the first pump? This may be the only pump anyone ever asked for, right? But why isn't it imperiled on, say, the eighth pump or the ninth pump when it really starts to diminish the resources? Why isn't it at that point that the Montana exception is invoked? So I'm not fully sure I'm understanding the question, but as a factual matter here, we are now near the 100th pump, right? We're in a situation where the tribe was responding to a situation where there has been the massive explosion in these high-capacity pumps in the last 30 years. We have 10 times the volume of pumping that we did 30 years ago. Almost 3 billion gallons a year are pumped on the reservation by these high-capacity appropriations. And so it was in response to that threat that the tribe enacted the regulatory ordinance. So you're saying we're already at that point. We're at the point – see, I was understanding this as a single pump, not all these other pumps. And so I'm like, well, the first one's not going to hurt, but maybe you're telling me there's 100 pumps and that's different. We are – the record shows we are very close to 100 pumps. We have portions of the reservation where the stream flow has been reduced by over 50 percent, and that has had a dramatic effect on the fisheries and the wild rice. Mr. Vipon has a pump on a different stream that completely dried out that stream, which is a very important stream for the baitfish industry on the reservation. So we really are in a situation – and I understand the Montana language and I understand the presumption about regulating non-Indians, but we're in a situation where there's a very serious threat to resources that lie at the heart of the tribe's commercial economy, subsistence economy, culture, and religion. And it was in the face of that that the tribe enacted the ordinance. And what did the tribal court, in its recent opinion – it was recent, so I'm not as familiar with it – but what did it find on those issues? It found that because of the nature of the threat, the very real threat, that the tribe did have jurisdiction to enact the ordinance. It had regulatory jurisdiction to address this problem in the way it did. It then took a step which we think is not endorsed under the law and which we think is actually contrary to the law of this circuit, where it said, but there's an additional burden. I have to find not only that the tribe had regulatory jurisdiction, at which point we think it should have said, so he has to go apply for a permit, but I have – there's an extra burden for me to exercise adjudicatory jurisdiction at this point in time in this case, which means that I am going to assess now whether this particular pump poses a threat that rises to a level where a permit could be justified. And so in our view, the tribal court sort of stepped into the shoes of the regulator and usurped regulatory authority. This court's decision in the attorney's process case, the API case, stands for the proposition that regulatory jurisdiction and adjudicatory jurisdiction, the burden is the same, that once the tribe has the ability to regulate, there is the ability to adjudicate. So that's where we think the tribal trial court committed a legal error, which if we are to appeal through the tribal appellate system, that is one of the principal arguments we would be raising. And of course, as this court has said repeatedly, including most recently in the WPX Energy case, exhausting through the appellate court is an integral part of the exhaustion doctrine. I hope I've answered Your Honor's question about the nature of the threat and the lens and the issue here about how one justifies a tribal exercise of regulatory jurisdiction, even understanding the Montana standard. Under the other approach, tribes... I'm assuming, and correct me if I'm wrong, that the tribal court disagreed with you. The tribal... Yes and no. In its finding that it didn't have jurisdiction in this situation. So again, yes and no. It did find, and there were very strong findings, that the tribe has regulatory jurisdiction over individuals like Mr. Vipon over these appropriations because of everything I just said, the dire nature of the threat. It also found no jurisdiction here. But it then found that it had an extra burden in order to exercise adjudicatory jurisdiction and that it had to find at this stage that Mr. Vipon's pump was going to substantially contribute to the issue, to the problem. The alternative view, our view, is that once he found regulatory jurisdiction to exist, then one would go through the permitting process the way that one does in a typical governmental scheme. The problem with the tribal court's approach and Mr. Vipon's arguments are otherwise you reduce the tribe to the status of a tort plaintiff, where any time it wants to regulate, it has to bring a case against an individual and litigate it through, rather than being able to set up a generalized regulatory scheme that allows for the regulatory agency to make these nuanced determinations in the first place. I will note, for example, that under the, since the ordinance was passed, another non-Indian appropriator has taken the opposite approach and applied for a permit under the regulatory scheme and was granted a permit for high-capacity appropriations. So that is the scheme as it was set up and as the tribe intended for it to work. There is a right to judicial review if you're denied a permit. So what we thought is the critical question for the tribal court to address and then ultimately the federal courts is in the face of this broad-based threat, which the State of Minnesota also recognizes as a real threat and one where it has recognized a space, a real space for tribal regulation, was the tribe allowed to act as a government and to enact a broad-based regulatory scheme that provides for ample due process, ample ability to challenge on the specifics, but that regulates in the way that governments typically do. Thank you, Mr. Kanji. Thank you. Ms. Carter, we used a lot of your time on the mootness question and we spent a lot of time with Mr. Kanji on the merits, so I will allow you four minutes so maybe you can get into some of the merits. Okay. Thank you, Your Honor. I just want to address initially a couple things that he just indicated. First he says that Mr. Bipan's pump is maybe the hundredth pump, right? And there's a very serious threat with this totality of the pumps. But when Mr. Bipan applied for his Minnesota state permit, the White Earth DNR was invited to comment and participate in that process and they didn't say anything. They didn't raise a single concern. But now we're supposed to believe that his pump is the catastrophic tipping point for harm in the reservation when the state has made findings of fact that it isn't, that the state has considered the totality of the pumps. The state knows about all the permits it's issued and considered it and determined it was not harmful. Now, optically, that's, I mean, doesn't look good for the tribe on that and I think that's undisputed. But what's the legal significance of that? How does that affect our decision? Your Honor, I would say that the fact that first it's essentially a waiver in the fact that they're now claiming that this is so catastrophic, but they had this, the state even extended opportunity for them to comment and reached out to them personally and they still didn't do so. What they did instead in the meantime was pass this water protection ordinance, wait for Mr. Bipan to get a state permit, and two weeks later, sue him in the tribal court. And then, before the time to answer had run and before hearing on the motion, the tribal court granted an ex parte preliminary injunction against him from exercising his rights under the state permit. I mean, I get that, but again, optically that looks bad, but the tribal courts have remedied that, correct? Well, Your Honor, I would say that to the extent that Judge Jones' order remedied that, Judge Jones' order has a lot of issues. One is that he didn't simply stop at this issue of, he should have addressed the issue of whether he has jurisdiction over Mr. Bipan first, and then that is the end of the analysis. Instead, what he did is engage in this entire other analysis over the regulatory scheme. As you just described, what happened here is the tribe went to tribal court, and that is what dragged you into the tribal process. And as I understand it, the tribal court has now said, we're not going to hear these cases anymore. So, haven't you received the remedy you were seeking in this, you know, I don't want to be trite here, but isn't your problem over from a legal perspective? Because if you put another pump in, and they do the same thing they did this time, tribal court will just dismiss that, right? I don't believe so, Your Honor. I believe that the adjudicatory holding was only specific to this particular pump. It wasn't to the overall. The tribal court did not hold that it lacks adjudicatory jurisdiction over enforcement of the ordinance. That was not the holding. It was specific to this particular pump. So no, he could still end up there and be litigating in the tribal court again. Really this case is about the White Earths issue with the state of Minnesota's regulation. And in the tribal court issue, tribal court order that was issued last week, 133 of 154 findings of fact are based on alleged deficiencies in the state's regulation. Mr. Vipond is not the party to properly defend against the state's determinations on those issues. And the fact that the district court did not address this issue of joinder, the fact that the district court did not address any of the second Montana cases addressing exhaustion, the fact that the district court did not examine the data phase factors, all of that is error. And that is why this court should reverse the district court's decision. I looked at that issue on the joinder, and they're not subject, the tribe is not subject to federal joinder rules, right? I mean, they have their own joinder rules, and how do we adjudicate what their joinder rules say? Your Honor, it's, the principles underlying Rule 19 are based upon equitable principles, which is that the sovereign has interests. And any adjudication that occurs absent the sovereign is necessarily incomplete and prejudices the sovereign. There is a remedy here, which is adjudication in the federal court. It doesn't need to occur in the tribal court in order for, in the jurisdiction or the adjudication there would be necessarily incomplete. Thank you. Interesting case, well argued. We appreciate your appearance. I think the argument was helpful. We will do our best to render an opinion in due course. Case is now submitted, and you may be excused.